OPINION OF THE COURT
Thomas P. Flaherty, J.
The question on this motion for partial summary judgment is whether title II of article 23 of the Public Health Law, entitled “Houses of Prostitution: Injunction and *506 Abatement” can be employed to enjoin and abate a nuisance consisting of lewdness, assignation, or prostitution when it occurs at an establishment engaged in the sales of books, magazines, and the showing of movies. For the reasons stated below the court answers this question in the affirmative and denies defendant’s motion in all respects.
Defendant Cloud Books, Inc. (Cloud) operates the Village Book and News Store (Store) in Kenmore, New York. Defendant characterizes the Store as an adult bookstore, specializing in the sale of books and magazines of a sexually frank nature with the rear portion of the Store containing coin-operated mini-movie booths showing sexually explicit movies.
The District Attorney of Erie County commenced an equitable action in the State Supreme Court seeking to have a nuisance located at the Store permanently enjoined and abated. The complaint contains two separate causes of action: the first based upon the common-law concept of a nuisance and the second upon the statutory definition of a nuisance set forth in section 2320 of the Public Health Law. This motion concerns the second cause of action based on the Public Health Law.
The acts complained of and giving rise to the complaint involve allegations of a series of acts of prostitution, assignation, and lewdness observed by an undercover Erie County deputy sheriff at the Store over the course of some three weeks.
More specifically, the verified complaint alleges that the undercover deputy sheriff observed patrons masturbating on four different occasions, a female patron fondling a male patron, two males engaged in the act of fellatio; that while at the Store the undercover deputy sheriff was solicited for sexual conduct in return for a fee on at least four different occasions; and that Store employees were aware that acts of masturbation and offers of sexual conduct in return for a fee occurred on the premises but were unconcerned as long as the patrons involved were spending money on the Store’s movie booths. Most of the acts allegedly observed by the undercover deputy sheriff occurred in or around the rear portion of the Store where the coin-operated movie booths were located which, according to the verified com *507 plaint, is separated from the front counter area by a swinging half door, but visible therefrom. By its answer, defendant has denied both the commission of these acts and the knowledge that they occurred.
Section 2320 of the Public Health Law provides that whoever shall “erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance.” If the existence of the nuisance is admitted or established the court is mandated to enter an order of abatement directing the removal from the subject premises of all furnishings used in conducting the nuisance and directing their sale and the effectual closing of the premises against its use for any purpose for a period of one year (Public Health Law, § 2329, subd 1). Such order of abatement may be canceled upon payment by the owner of all costs of the proceeding and filing a bond in the full value of the property and on the condition that the owner will immediately abate the nuisance and prevent it from being established within a one-year period (Public Health Law, § 2332, subd 1).
Prior to any judgment in an action commenced under title II, the plaintiff may obtain a temporary restraining order (Public Health Law, § 2323, subd 1) and a preliminary injunction (Public Health Law, § 2321, subd 4) enjoining the conduct complained of and restraining removal or interference with the furnishings used in connection therewith.
Plaintiff’s request for a temporary restraining order in the case at Bench was denied as were two separate applications for a preliminary injunction. In denying plaintiff’s first application for a preliminary injunction the Honorable John C. Broughton found that plaintiff’s application fell significantly short of meeting the three-pronged burden associated with any motion for temporary injunctive relief: likelihood of ultimate success on the merits, irreparable injury absent granting the injunction, and a balancing of the equities in favor of the applicant. By way of dicta, that court noted that plaintiff had not pursued the legal remedy of criminal prosecution prior to seeking equitable relief or demonstrated that such a remedy was inadequate. *508 Also by way of dicta that court raised a concern that under a title II action an individual enjoined from conduct which is also proscribed by the Penal Law could eventually be imprisoned without constitutional and procedural safeguards traditionally associated with criminal prosecutions. Upon renewal of plaintiff’s application for a preliminary injunction Justice Broughton again denied temporary relief, this time on the basis that to grant the temporary injunctive relief sought would obviate the need for the ultimate remedy sought, that there was no proof that the acts complained of were still going on, that successful enforcement of a temporary injunction was unlikely, and that plaintiff’s likelihood of success on the merits of its second cause of action was questionable as title II is directed toward the abatement and abolition of houses of prostitution.
On this motion defendant seeks partial summary judgment pursuant to CPLR 3212 (subd [e]) dismissing, denying and severing those portions of the complaint which seeks to: permanently enjoin Cloud from lawfully conducting presumptively protected business activities; direct the Sheriff to remove, seize and sell all furniture, fixtures and personalty owned by Cloud; effectually close the Store and prohibit its use by Cloud for any purpose; direct the seizure of all materials at the Store; and to obtain any relief pursuant to the Public Health Law.
Defendant contends that title II is inapplicable as against the Store because it applies only to houses of prostitution, as that term is generally and commonly known. On a constitutional level, it is defendant’s position that if plaintiff obtained the relief requested under title II defendant would be prevented from continuing to show movies or sell books and magazines which are presumptively protected due to allegations that acts and/or conduct other than the sale or exhibition of books, magazines, and movies occurred at the Store in the past. Defendant con-, tends that the issuance of an injunction would constitute a total and final prior restraint upon presumptively protected activity and would restrain defendant from continuing to disseminate materials clearly protected by the Federal and State Constitutions and thus reach far beyond the *509 alleged activity asserted. Defendant further maintains that the presumptively protected activity which takes place at the Store would be impermissibly restrained by application of the sanctions provided by title II since that title does not contain required procedural and constitutional safeguards.
Plaintiff responds that closure of the Store is sought not because of promotion of materials which might be obscene but to enjoin a nuisance consisting of proscribed sexual activity and solicitation. Plaintiff maintains that title II applies to any building, erection or place used for purposes of lewdness, assignation, or prostitution and does not legitimize such activity solely because books, magazines or movies are also promoted thereat. Plaintiff asserts that the sanctions of injunction, confiscation of property, fine or imprisonment which might flow under title II would be occasioned not by virtue of any constitutionally protected activity occurring at the Store but solely on the basis of activity not so protected. Plaintiff also maintains that summary relief is improper as questions of fact have been raised by joinder of issue herein and since the determination of constitutional issues of the magnitude asserted by defendant is not proper on a motion for summary judgment.
Initially, the court declines to accept the limited view of the applicability of title II as it relates to the character of the location in question (see Commissioner of Dept. of Bldgs. of City of N. Y. v Sidne Enterprises, 90 Misc 2d 386, 389). Although title II carries the title of “Houses of Prostitution: Injunction and Abatement” and the title of each section of the article contains the prefix “Houses of prostitution”, the thrust of the article is broader as indicated by the explicit language of the first section (§ 2320) which provides as follows:
“1. Whoever shall erect, establish, continue, maintain, use, own, or lease any building, election, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance.
“2. The building, erection, or place, or the ground itself, in or upon which any lewdness, assignation, or prostitution is conducted,' permitted, or carried on, continued, or exists, *510 and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are hereby declared to be a nuisance and shall be enjoined and abated as hereafter provided.” (Emphasis supplied.)
The language of this section does not describe a house of prostitution, as that term is generally and commonly known but includes any building, erection, or place used for the purpose of lewdness, assignation, or prostitution. The statute does not speak in terms of “primary use” for the purposes of lewdness, assignation, or prostitution, but merely “use” for that purpose. While a title or heading may help clarify or point the meaning of an imprecise or . dubious provision, it may not alter or limit the effect of unambiguous language in the body of the statute itself. The character of a statute is to be determined by its provisions, and not by its title (Squadrito v Griebsch, 1 NY2d 471, 475).
The term house of prostitution comes within the definition of disorderly house (24 Am Jur 2d, Disorderly Houses, § 2) and notwithstanding the use of the term “house”, it is not essential that a place be a house proper or a permanent abode in order to be a disorderly house, indeed it may be merely a room, part of a house, an apartment, a place of business, a boat, a bathhouse, a wagon, or a tent (id., § 4). Furthermore, a disorderly house need not be exclusively devoted to the kind of activities ordinarily branded as disorderly; it may be chiefly devoted to a legitimate purpose and yet be a disorderly house when illegal practices are engaged in under such circumstances as would by themselves make the place a disorderly house (id., § 5). Such is the nature of the proof which a plaintiff must adequately demonstrate as part of his burden in succeeding in a title II action when the primary purpose of a premises may not be for the purpose of lewdness, assignation, or prostitution.
The court agrees that title II was not intended and should not be construed to apply to bookstores as bookstores. However, the provisions of title II are applicable to bookstores which are “used for the purpose of lewdness, *511 assignation, or prostitution” (Public Health Law, § 2320, subd 1).
In upholding the application of a similar abatement statute[1] Michigan’s Supreme Court held that numerous instances of accosting and soliciting for purposes of prostitution occurring at a bar would be sufficient to sustain finding that such place constituted a public nuisance subject to abatement under that State’s statute (State ex rel. Wayne County Prosecuting Attorney v Levenburg, 406 Mich 455).
The court does not adopt defendant’s view that this is a case involving impermissible prior restraint of presumptively protected materials or that the sanctions of title II which are sought against the Store are overbroad in scope and lacking requisite procedural and substantive protections given the nature of the defendant’s First Amendment rights with respect to books, magazines and movies. The cases cited by defendant (Cosgrove v Cloud Books, 83 AD2d .789; Vance v Universal Amusement Co., 445 US 308) do not support the proposition that a nuisance consisting of lewdness, assignation, or prostitution cannot be enjoined or abated in the event the building involved also houses a bookstore. Rather, those cases, as well as numerous others cited by the defendant, involving attempts to enjoin obscenity prior to a judicial determination, stand for the proposition that it is constitutionally impermissible to prohibit future conduct which might fall within the purview of the First Amendment.
In a case involving a massage parlor wherein it was alleged that proscribed sexual activity also occurred, the Arizona Supreme Court upheld the constitutionality of the State’s abatement statute[2] against the defendant’s challenge that it worked an impermissible invasion of privacy *512 rights and denied procedural and substantive due process (State of Arizona v B Bar Enterprises, 133 Ariz 99).
This is a case involving abatement of a nuisance not one involving prior restraint of presumptively protected materials and, therefore, defendant herein is not entitled to the full panoply of rights and safeguards afforded by Freedman v Maryland (380 US 51) and its progeny.
An establishment, whether it be of the highest calling or a market for the dissemination of materials of questionable moral value or legality, cannot employ the constitutional rights and protections, which it properly enjoys, as a curtain behind which illegal activity can be freely encouraged and conducted and beyond which legitimate law enforcement can perform its proper function in the enforcement of statutes entrusted to such agencies. The protections afforded by the laws and Constitutions of the United States and the State of New York are designed to enhance the full exercise of the freedoms we enjoy and are not to be subverted as shields for illegal conduct.
The court makes no determination with respect to the sufficiency or character of the allegations contained in the complaint herein other than to state that enough has been alleged to warrant a trial. Whether or not the activities alleged are sufficient to bring the Store within the purview of title II is a'factual question which cannot be determined on this motion for partial summary judgment. It must be left to the trial court to determine whether the Store was “used for the purpose of lewdness, assignation, or prostitution” and therefore subject to the sanctions of title II (see People v Morbel Realty Corp., 87 Misc 2d 989; People ex rel. City of New York v Macbeth Realty Co., 100 Misc 2d 926).
Also before the court are plaintiff’s motion for a protective order vacating defendant’s six notices to take depositions upon oral examination and defendant’s cross motion for an order pursuant to CPLR 3102 (subd [f]) directing the oral examinations of the individuals specified in its six notices.
Defendant has caused to be served upon plaintiff notices to take depositions of the District Attorney, the Sheriff, the undercover deputy sheriff involved in this case, *513 the Village of Kenmore Chief of Police, any and all Kenmore village police officers involved in the investigation of the Store between September 1 and October 1, 1982, and any and all deputy sheriffs also so involved. The plaintiff has stipulated its willingness to produce the undercover deputy sheriff whose observations formed the basis for the allegations in the complaint.
Under the facts and circumstances of this case, the other individuals noticed for depositions other than the District Attorney are agents or employees of the plaintiff and as such are subject to examination upon notice and without the necessity of a court order (CPLR 3101, subd [a], par [1]). However, as the Appellate Division, Second Department, has recently restated, “The liberalization of discovery procedures (see CPLR 3101 et seq.) has not altered the general rule that, in the first instance, a corporation may designate which of its officers, directors or employees shall represent it for the purposes of pretrial depositions (see Instructional Tel. Corp. v National Broadcasting Co., 63 AD2d 644; Lonigro v Baltimore & Ohio R.R. Co., 22 AD2d 918). Where additional persons are sought to be deposed, the examining party must make a formal application to the court and must carry the burden of demonstrating that the corporate representatives already deposed possessed insufficient knowledge or were otherwise inadequate (see Besen v C.P.L. Yacht Sales, 34 AD2d 789).” (Rosner v Maimonides Hosp., 89 AD2d 847, 848.) This principle, applied generally to corporations, is equally applicable to the State (National Reporting v State of New York, 46 AD2d 576, 578).
In the absence of proof that the District Attorney possesses detailed personal knowledge of the facts in issue, he should be accorded the normal right, in the first instance, to designate his witness (National Reporting, supra; Long Is. Coll. Hosp. v Whalen, 55 AD2d 792).
Accordingly, plaintiff’s motion for a protective order vacating the six notices is in all respects granted and defendant’s cross motion for an order granting depositions is in all respects denied without prejudice to defendant taking a deposition upon oral examination of a knowledgeable witness to be produced by the plaintiff and subse *514 quently moving, if necessary, for the deposition of additional persons upon a proper showing, if so advised.
In sum, defendant’s motion for partial summary judgment is in all respects denied; plaintiff’s motion for a protective order is in all respects granted; and defendant’s cross motion for an order directing depositions is in all respects denied.

. Michigan’s abatement ’ statute (Mich Comp Laws Ann, § 600.3801) provides in pertinent part: “Any building * * * or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons * * * is hereby declared a nuisance and * * * shall be enjoined and abated as hereinafter provided”.

. Arizona’s bawdy house abatement statute (Ariz Rev Stats Ann, § 12-802) declares that every building used as a place of prostitution, assignation, or lewdness is a nuisance which shall be abated by means of removal and sale of all fixtures used in aiding the nuisance and foreclosure of the building for one year.